

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| KENNETH RAY SOWELL, PRO SE, | § | |
| A.K.A. KENNETH SOWELL, | § | |
| TDCJ-CID No. 1322390, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:08-CV-0009 |
| | § | |
| HERMAN NUSZ, | § | |
| SUZZANNE TENORIO-PAUL, | § | |
| TOSHA JAMES, and PATTY WILKINS, | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION**

Plaintiff KENNETH RAY SOWELL, also known as KENNETH SOWELL, acting pro se and while a prisoner confined in the Texas Department of Criminal Justice, Correctional Institutions Division, has filed suit pursuant to Title 42, United States Code, section 1983 complaining against the above-referenced defendants and has been granted permission to proceed in forma pauperis.

Plaintiff alleges medical care for a serious eye condition was delayed from July of 2007 through January 16, 2008, resulting in some loss of vision in his eye.

Plaintiff requests a award of monetary relief in the sum of $170,000.00.

**JUDICIAL REVIEW**

When a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, the Court must evaluate the complaint and dismiss it without service of

process, *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990), if it is frivolous[1], malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. 1915A; 28 U.S.C. 1915(e)(2). The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions. 42 U.S.C. 1997e(c)(1). A *Spears* hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991)[2].

The Magistrate Judge has reviewed the facts alleged by plaintiff to determine if his claim presents grounds for dismissal or should proceed to answer by defendant.

## THE LAW AND ANALYSIS

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." Such indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).

Deliberate indifference is defined as a failure to act where prison officials have knowledge of a substantial risk of serious harm to inmate health or safety. *Farmer v. Brennan*,

---

[1] A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir. 1993); *see*, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

[2] *Cf*, *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986) ("Of course, our discussion of *Spears* should not be interpreted to mean that all or even most prisoner claims require or deserve a *Spears* hearing. A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone or the complaint together with the *Watson* questionnaire.").

511 U.S. 825, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994). However, not every claim of inadequate or improper medical treatment is a violation of the Constitution, *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); nor does a disagreement with a doctor over the method and result of medical treatment require a finding of deliberate indifference. *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). "[N]egligent medical care does not constitute a valid section 1983 claim." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Further, merely alleging that a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991).

**Defendants HERMAN NUSZ and TOSHA JAMES**

Plaintiff claims defendants NUSZ and JAMES were negligent in managing the medical staff. Thus, plaintiff's claims are based, in whole or in part, upon the supervisory capacities of these defendants and their failure to correct the alleged wrong; however, the acts of subordinates trigger no individual section 1983 liability for supervisory officers. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314(5th Cir. 1999). A supervisory official may be held liable only when he is either personally involved in the acts causing the deprivation of a person's constitutional rights, or there is a sufficient causal connection between the official's act and the constitutional violation sought to be redressed. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987); *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir.1981) (*per curiam*). Plaintiff has alleged no fact demonstrating personal involvement by these officials and has alleged no fact showing any causal connection between their acts or omissions and the alleged constitutional violation.

Plaintiff alleges he sent I-60's or letters of complaint to defendant JAMES twice in early January and one to defendant NUSZ on January 8th; however, the responses he has attached to his complaint show these I-60's or letters were responded to by subordinates who researched plaintiff's complaint and informed him he had been scheduled to see a nurse but that there was a six-month waiting list to see the eye doctor, noting plaintiff's earlier refusal of such an appointment. In light of the record of plaintiff's earlier refusal, which plaintiff now challenges but which refusal these defendants were entitled to consider, and the fact that plaintiff was promptly scheduled to see a doctor for evaluation of his eye complaint on January 16th, the facts as plaintiff presents them do not support a claim of deliberate indifference. Consequently, plaintiff's allegations against these defendants fail to state a claim on which relief can be granted.

**Defendants PATTY WILKINS and SUZANNE TENORIO-PAUL**

Plaintiff alleges defendant WILKINS responded to an August 2, 2007 sick call request to see an eye doctor by making an appointment for plaintiff with the doctor. Plaintiff says he received the lay-in pass but was never pulled from his cell the day of the appointment. Plaintiff alleges WILKINS then responded to his August 17, 2007 sick call by informing him that he had been rescheduled, but that he never got a lay-in pass.

Plaintiff alleges he submitted a September 19, 2007 sick call request inquiring why he hadn't seen the eye doctor and was answered by defendant WILKINS that he had refused his August 29, 2007 appointment.

Plaintiff says his September 24th and 25th sick call requests received a response from defendant TENORIO-PAUL, who stated that he had "no showed the first and refused the second

time, you have been resceduled [sic] one more time only – routine request and may take up to (6) months from this date, 9-27-07."

Plaintiff was bench warranted off unit October 9th through November 29th. When he returned, he submitted a November 29th sick call request, this time complaining that the delay had caused his right eye to go partially blind and stating he needed to see the doctor immediately. Defendant WILKINS responded that he had refused his earlier optometry appointment but, nevertheless, scheduled a nurse's appointment for him.

Plaintiff was seen by the nurse on December 4th, who referred him to defendant SUZANNE TENORIO-PAUL. Plaintiff was seen by defendant TENORIO-PAUL cellside later that same day. At that time, plaintiff says, she responded to his complaint that his eye was infected and that he was losing his vision by saying that the next appointment would be the last one and she was not going to keep on setting appointments because he had refused the earlier one. Plaintiff responded he had not refused any appointment to see the eye doctor and states that defendant TENORIO-PAUL conceded there was no refusal form signed by him. Plaintiff states sometimes a refusal form is signed by security or even by medical personnel, but does not allege who signed this one or that it was not legitimately done or, if erroneous, was anything more than mere negligence on the part of the unidentified party.

By his July 19, 2008 Questionnaire response, plaintiff informs the Court he was seen by an optometrist on January 16, 2008 and was given eye drops which he felt only worsened his drainage. Plaintiff says he was seen on March 12 and on March 26, 2008, prescribed medication for the infection and given follow-up treatment. He was then transferred to "the Monfrey Hospital" for surgery "by the optometrist."

Plaintiff argues the delay in seeing the optometrist[3] led to the infection of his eye and partial loss of vision. This delay, however, does not appear to be attributable to deliberate indifference by either WILKINS or TENORIO-PAUL.

The facts presented by plaintiff show very little delay. Plaintiff first complained in August 2007 and received two successive appointments in response. Plaintiff has alleged no fact showing defendant WILKINS caused the failure to pull him from his cell for the first appointment or the determination, which he challenges, that he refused the second appointment. There is no indication defendant TENORIO-PAUL was involved in any way with the August 2007 events. When plaintiff submitted a September 19th sick call request, defendant WILKINS informed him he had refused is August 19th appointment, but when plaintiff submitted more sick call requests on September 24 and 25 saying he had not refused his August appointment, TENORIO-PAUL responded on September 27, 2007 by placing his name on the list to see the eye doctor, although she informed plaintiff it might take up to six months. Plaintiff was then bench-warranted off the unit from October until November 29, 2007 and was not available to see the doctor even if his name came up during that period. Neither WILKINS nor TENORIO-PAUL was responsible for the failure to provide medical treatment to plaintiff during this period.

When plaintiff returned, his complaints resulted in evaluation by a nurse and a visit with defendant TENORIO-PAUL within five days after his arrival back on unit. Further, plaintiff saw a doctor on January 16, 2008 and twice in March 2008. Subsequently, he received surgery, but alleges he suffers diminished vision in the affected eye.

---

[3] It appears plaintiff actually means ophthalmologist, since he utilizes this term interchangeably with "eye doctor" and uses it to designate the person who performed surgery on his eye.

The facts presented by plaintiff do not show that WILKINS and/or TENORIO-PAUL knew of facts indicating he was in substantial danger of serious harm, drew the necessary inference of such possible harm, and then acted with deliberate indifference. Despite the fact that plaintiff was repeatedly counseled against refusing another doctor's appointment and told of the possible consequences, at no point did either defendant refuse plaintiff medical care or refuse or delay scheduling him for a doctor's visit. Instead, these facts show successive circumstances, *i.e.*, the initial failure to pull plaintiff for his appointment, the record of a no-show for the second appointment, and his absence off-unit for October and November, none of which is attributable to any of the defendants, delayed a visit with a doctor. Whenever plaintiff requested to see a doctor or challenged the record that he had refused an appointment, he was scheduled to see either a doctor or a nurse. Further, he saw defendant TENORIO-PAUL within five days of his return to the unit and saw a doctor on January 16, 2008. Plaintiff has presented no fact to show that defendant WILKINS or defendant TENORIO-PAUL delayed this visit in any way or could have expedited it further.

Moreover, while plaintiff appears to have been dissatisfied by the treatment he received from the January 2008 doctor's visit, this dissatisfaction does not elevate plaintiff's claim to a constitutional dimension. *Varnado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991).

At most, plaintiff's allegations might support a claim of negligence, if that; however, negligent medical care will not state a claim under section 1983. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

## CONCLUSION

For the reasons set forth above and pursuant to Title 28, United States Code, sections 1915A and 1915(e)(2), as well as Title 42, United States Code, section 1997e(a), it is the RECOMMENDATION of the Magistrate Judge to the United States District Judge that the Civil Rights Complaint by plaintiff KENNETH RAY SOWELL pursuant to Title 42, United States Code, section 1983 be DISMISSED WITHOUT PREJUDICE FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 29th day of September 2008.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * **NOTICE OF RIGHT TO OBJECT** *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).